United States District Court
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN COBB, et al., | No. C 12-01372 JSW |
| Plaintiffs, | **ORDER RESOLVING MOTIONS TO DISMISS AND TO STRIKE** |
| v. | |
| JPMORGAN CHASE BANK, N.A., et al., | **(Docket Nos. 15, 21, 25, 44, 49, 74)** |
| Defendants. | |

**INTRODUCTION**

Now before the Court for consideration are motions to dismiss filed by: (1) the City of Menlo Park ("Menlo Park"); (2) Dennis J. Sinclitico, Esq. ("Sinclitico") and Morgan Lewis & Bockius LLP ("Morgan Lewis"); (3) Anthony V. Smith, Esq. ("Smith"); (4) JPMorgan Chase Bank, N.A. ("JPMorgan"); (5) Wells Fargo Bank, N.A. ("Wells Fargo"); and the United States of America ("United States").[1]  Smith also has filed a special motion to strike, pursuant to California Code of Civil Procedure Section 425.16, the Anti-SLAPP[2] statute.

On September 6, 2012, Plaintiffs, Jonathan Cobb Sr. ("Cobb Sr.") and Jason Cobb, filed a motion for leave to file an amended complaint, on the basis that they intended to dismiss the claims against defendants Ernest Brede ("Brede"), Luis Contreras ("Contreras"), and Donald T. Showers III ("Showers").  Plaintiffs were not required to amend in order to dismiss the claims

---

[1] The United States moves to dismiss on behalf of Chris Nathan, Ivy Garcia, Mary Ann Buckley and Brenda Tolbert, to whom the Court will refer collectively as the "Court Defendants."

[2] SLAPP is an acronym for "Strategic Lawsuit Against Public Participation."

against Brede, Contreras and Showers.[3] *See* Fed. R. Civ. P. 41(1)(A). On September 11, 2012, the Court denied the motion for leave to amend, but it ordered Plaintiffs to file a notice of dismissal.

On September 28, 2012, Plaintiffs filed a Notice of Dismissal, and they subsequently withdrew it. (*See* Docket Nos. 90-91.) Plaintiffs stated that the Notice of Dismissal was filed "in error as such does not reflect the thoughts and intentions of both Plaintiffs," and that Jason Cobb was going to dismiss his claims. (Docket No. 91, Notice of Withdrawal at 2, Ex. B.) Accordingly, the Court DISMISSES all claims asserted by Jason Cobb.

The Court has considered the parties' papers, relevant legal authority, and the record in this case. For the reasons set forth in the remainder of this Order, the Court GRANTS, IN PART, AND DENIES, IN PART, the motions to dismiss. The Court DENIES, WITHOUT PREJUDICE, Smith's special motion to strike.

**BACKGROUND**

On March 19, 2012, Cobb, Sr. filed the Complaint in this action. On March 21, 2012, Cobb Sr. filed the First Amended Complaint ("FAC"), which is the operative pleading. Cobb, Sr. is a former member of The English Menlo Park Congregation of Jehovah's Witnesses (the "Congregation"), and he was an officer and director of The English Congregation of Jehovah's Witnesses, Menlo Park, California, Inc., a non-profit corporation (the "Corporation").[4] (FAC ¶¶ 9-10.) Cobb, Sr. alleges that Brede, Contreras, and Showers improperly removed him from his position an officer and director of the Corporation. According to Cobb Sr., this action was part of a scheme to assume the control of the property and assets of the Congregation, which is held by the Corporation, and as part of a money laundering scheme. (*See, e.g.,* FAC ¶¶ 12-14, 44, 48-49, 51.)

Cobb, Sr. further alleges that Brede, Contreras, and Showers used Jason Cobb's identity to open a bank account at JPMorgan, improperly added their names to existing bank accounts at

---

[3] To date, Brede, Showers, and Contreras have not appeared. However, the Court's ruling in this Order applies equally to them.

[4] Cobb, Sr. refers to the corporation by its original name, the Menlo Park Congregation of Jehovah's Witnesses, Inc.

2

Wells Fargo, and removed the Cobbs as signatories on the accounts.  (FAC ¶¶ 19, 53-54.)  Cobb Sr. alleges that bank records from JPMorgan and Wells Fargo will provide evidence of the alleged money laundering scheme.  (*See, e.g., id.*, ¶¶ 2, 19, 44, 93.)  Jason Cobb brought these concerns to the attention of the Menlo Park Police Department ("MPPD").  (*Id.* ¶¶ 45, 59.)  Cobb, Sr. alleges that, upon learning of Jason's report, Brede and Showers filed a police report with the MPPD, in which they falsely accused Jason Cobb of stealing the Corporation's funds.  (*Id.* ¶ 61.)  Jason Cobb also requested that the District Attorney's Office for San Mateo investigate the actions taken by Brede, Showers and Contreras, but it declined to do so.  (*Id.*, ¶ 68, Ex. 7.)  Cobb Sr. alleges that Smith, on behalf of an alleged RICO enterprise, bribed members of the MPPD in order get the MPPD to halt the investigation and "affected and influenced the response from the District Attorney's Office for San Mateo County declining [the] request for an investigation."  (FAC ¶¶ 69-70, 75.)

On August 31, 2010, Cobb, Sr. filed a lawsuit against Brede, Contreras and Showers, in which he challenged his removal as an officer of the Corporation, which was assigned to Chief Magistrate Judge James ("Judge James"), *Cobb v. Brede*, N.D. Cal. Case No. 10-CV-3907 (hereinafter the "*Brede* litigation").  Smith represented Brede, Contreras, and Showers in the *Brede* litigation.  (FAC ¶ 15.)  On May 23, 2011, Jason Cobb filed a lawsuit against a number of his co-workers at Cisco Systems, Inc., which was assigned to Magistrate Judge Ryu ("Judge Ryu"), *Cobb v. Consunji*, N.D. Cal. Case No. 11-CV-2496 (hereinafter the "*Consunji* litigation").  Cobb, Sr. is not a party to *Consunji* litigation.  Sinclitico and Morgan Lewis represented the defendants in *Consunji* litigation.  (FAC ¶¶ 16-17.)

During discovery in the *Brede* litigation and the *Consunji* litigation, the Cobbs issued subpoenas to Wells Fargo and JPMorgan, in an effort to obtain the bank records that Cobb, Sr. alleges will contain evidence of the money laundering scheme.  Cobb, Sr. further alleges that each of the Defendants has acted to prevent him from obtaining access to those records.  For example, Cobb Sr. alleges that Sinclitico and Smith, in conjunction with the Court Defendants, created false orders that terminated the *Brede* litigation and the *Consunji* litigation.  (*See generally* FAC ¶¶ 76-80.)  Cobb Sr. alleges that JPMorgan and Wells Fargo assisted these

3

efforts by engaging in "evasiveness and delay tactics" to avoid producing the documents covered by the subpoenas. (*Id.* ¶¶ 92-96.)

Based on these and other allegations, which will be addressed as needed in the remainder of this Order, Cobb Sr. asserted four claims for relief: (1) violations of the Racketeering Influenced Corrupt Organizations Act (the "Civil RICO claim"), 18 U.S.C. § 1692(c) (FAC ¶¶ 97-209); (2) Conspiracy to Violate RICO (the "RICO Conspiracy claim"), 18 U.S.C. § 1962(d) (FAC ¶¶ 210-216); (3) Slander in violation of California Civil Code section 46 (FAC ¶¶ 217-220); and (4) Civil Conspiracy in violation of California Civil Code section 1741.10 (FAC ¶¶ 221-225).[5]

**ANALYSIS**

**A.  Applicable Legal Standards.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). Cobb Sr. is proceeding *pro se*, and the Court must construe *pro se* filings liberally. *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[5] Cobb Sr. cited "California Code of Civil Procedure section 46" as the basis for this claim. Defendants argue that there is no such statute, and they urge the Court to grant the motion to dismiss for that reason alone. In light of Cobb Sr.'s *pro se* status, the Court finds this argument without merit. Therefore, it DENIES, IN PART, the motions to dismiss to the extent they rest on that argument.

4

1  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
2  *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility
3  standard is not akin to a probability requirement, but it asks for more than a sheer possibility
4  that a defendant has acted unlawfully.... When a complaint pleads facts that are merely
5  consistent with a defendant's liability, it stops short of the line between possibility and
6  plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation
7  marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to
8  amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291,
9  296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242,
10 246-47 (9th Cir. 1990).

**B.    The Court Grants the United States' Motion to Dismiss.**

The United States moves to be substituted in as the sole federal defendant, and it moves to dismiss for lack of subject matter jurisdiction on the basis of sovereign immunity. The United States also moves to dismiss for failure to state a claim and argues the Court Defendants are protected by the doctrine of quasi-judicial immunity. The Court finds the latter argument dispositive.[6]

The Ninth Circuit has held that clerks of court and law clerks have absolute immunity when performing quasi-judicial functions in damages actions. *Moore v. Brewster*, 96 F.3d 1240, 1243-45 (9th Cir. 1996), *superseded by statute on other grounds*; *Mullis v. United States Bankruptcy Court for the District of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1996). Quasi-judicial functions include those activities coordinated with a judge and court proceedings. *Moore*, 96 F.3d at 1244-45; *Mullis*, 828 F.2d at 1390. Allegations of conspiracy do not defeat such immunity. *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc). "Judicial

---

[6] The United States filed a certification pursuant to 28 U.S.C. Section 2679(d). On September 14, 2012, Cobb Sr. filed a challenge to that, although he either should have raised those arguments in his opposition brief or sought leave of court to file a supplemental brief. Although Cobb Sr. is proceeding *pro se*, he is required to comply with the rules of procedure. *See Ghazali v. Moran*, 46 F.3d, 52, 54 (9th Cir. 1995) (noting that *pro se* litigants are bound by the rules of procedure), *cert denied*, 516 U.S. 838 (1995); Civil L.R. 3-9(a). Because the Court did not rely on the certification to resolve the motion, it has not considered Cobb Sr.'s challenge to that certification.

5

immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Id*. (quoting *Cleavinger v. Saxner*, 474 U.S. 193 (1985)).

The Court has reviewed the allegations in the FAC. Those allegations show that the claims against the Court Defendants arise from activities such as making docket entries and processing orders in the *Brede* litigation and the *Consunji* litigation. (*See, e.g.,* FAC ¶¶ 81, 86, 91, 107, 139, 141, 143-144, 146, 148, 150-166.) Those actions are "quasi-judicial" in nature. Further, the allegations of conspiracy, which are conclusory in nature, do not alter the Court's analysis. Therefore, the Court GRANTS the United States' motion to dismiss.

**C.     The Court Grants Menlo Park's Motion to Dismiss.**

Menlo Park moves to dismiss the RICO claims on the basis that it is not capable of forming the requisite intent to commit the predicate acts alleged in the FAC. Cobb Sr. clarified that he does not assert the RICO claims against Menlo Park. Accordingly, the Court DENIES, AS MOOT, Menlo Park's motion to dismiss those claims.[7] In addition, for the reasons discussed in Section F, the Court dismisses the state law claims asserted against Menlo Park.

**D.     The Court Dismisses Civil RICO and RICO Conspiracy Claims.**

It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). It also is "unlawful for any person to conspire to violate any of the provisions of the subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

In order to state a Civil RICO claim, Cobb Sr. must allege facts showing: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')

---

[7] Cobb Sr. suggested he could amend the FAC to substitute individual MPPD officers, who are referenced by name in the FAC, as defendants in the RICO claims. (Docket No. 49, Opp. to Menlo Park Mot. at 5:20-23.) The Court construes that suggestion as a request for leave to amend. For the reasons set forth in the remainder of this Order, the Court concludes that it would be futile to grant Cobb Sr. leave to amend the RICO claims and, thus, denies the request.

1  (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996), in turn citing 18 U.S.C. §§ 1964(c), 1962(c)).[8] In order to state a claim for RICO conspiracy, Cobb Sr. must allege that a person conspired to violate section 1962(c), that he suffered RICO injury by reason of overt acts, which constitute predicate acts under the RICO statute, in furtherance of the conspiracy. *See, e.g, Reddy v. Litton Industries, Inc.*, 912 F.2d 291, 295 (9th Cir. 1990).

### 1. RICO Injury.

Smith, Sinclitico, Morgan Lewis, JPMorgan and Wells Fargo move to dismiss, *inter alia*, on the basis that Cobb Sr. fails to allege RICO injury.[9] *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268-69 (1992). In order to determine whether Cobb Sr. has alleged facts that are sufficient to show RICO injury, the Court looks to whether he has shown "harm to a specific business or property interest - a categorical inquiry typically determined by reference to state law." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005); *see also Newcal Industries, Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1055 (9th Cir. 2008) ("injury is compensable under RICO if the injury constitutes 'harm to a specific business or property interest' and if the alleged business or property interest is cognizable under state law"). Cobb Sr. also must show "some tangible financial loss" connected with the harm to his business or property interest. *Diaz*, 420 F.3d at 900; *see also Canyon County v. Sygenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008).

In *Diaz*, the plaintiff asserted a civil RICO claim, based on allegations that he was a victim of the Los Angeles Police Department's ("LAPD") "Rampart" scandal. According to the

---

[8] Hereinafter, the Court refers to requirement that a plaintiff suffer injury to his or her business or property as "RICO Injury." A plaintiff must establish RICO injury to have standing to pursue a RICO claim. *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

[9] Defendants argue that Cobb Sr. failed to include any allegations of damages in the paragraphs addressing his first claim for relief. To the extent the Defendants argue the Court should dismiss on that basis, their motions are denied. Cobb Sr. is proceeding *pro se*, and the Court must construe his pleadings liberally. Thus, the Court has examined the FAC in its entirety, and it has examined his supplemental statement of damages, to determine whether Cobb Sr. alleges sufficient facts to show RICO injury.

7

1  plaintiff, members of the LAPD fabricated evidence to show he committed assault with a deadly
2  weapon, tampered with witnesses, and conspired to falsely convict him. The plaintiff argued
3  that he suffered RICO injury, because he lost employment opportunities while he was
4  incarcerated on the charges and while he attempted to defend against the charges. *Diaz*, 420
5  F.3d at 898. The district court dismissed and concluded that the plaintiff lacked standing to
6  establish a RICO violation, because he failed to allege injury to business or property. The Ninth
7  Circuit reversed.

The *Diaz* court reasoned that "[t]he harms [the plaintiff] alleges amount to intentional interference with contract and interference with prospective business relations, both of which are established torts under California law." *Id.* at 900. Because the plaintiff "could not fulfill his employment contract or pursue valuable employment opportunities because he was in jail," the court found that the plaintiff "alleged both the property interest and the financial loss," necessary to show injury to business or property. *Id.*[10]

Cobb Sr. argues that he adequately alleges RICO injury, because: (1) he alleges injury to his reputation and goodwill; (2) he alleges he has been deprived of his right to honest services; (3) he has been injured by the alleged obstruction of justice in the *Brede* litigation, because it was improperly and fraudulently dismissed; and (4) he has incurred pecuniary damages, including fees and costs associated with the *Brede* litigation. (FAC ¶ 215; *see also* Docket No. 71, Supplemental Statement of Damages at 2:1-26.)

Cobb Sr.'s allegations of injury to his reputation or goodwill are personal injuries that are unconnected to a business or property interest recognized under state law and, thus, are insufficient to show injury to a business or property interest. *Cf. Diaz*, 420 F.3d at 893-903. Similarly, "the deprivation of 'honest services' does not constitute concrete financial loss [sufficient to establish injury to state a RICO claim]." *United States v. Kincaid-Chauncey*, 556 F.3d 923, 941 n.14 (9th Cir. 2009) (quoting *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (brackets as in *Kincaid-Chauncey*).

---

[10] The *Diaz* court did not, however, reach the issue of "whether the injury was 'by reason of' the" alleged RICO violation. *Id.* at 902 n.3.

8

Cobb Sr. also argues that he has alleged RICO injury, based on the allegations that the Defendants' conduct "jeopardizes the reputation and goodwill of" the Corporation "and ... the tax-exempt status of the [C]orporation, and generally contradicts and offends the very ideals prompting the formation of that [C]orporation." (*See, e.g.,* Docket No. 36, Opp. Br. to JPMorgan Mot. at 5:1-6.) However, these are alleged harms to the Corporation, which is not *Cobb Sr.'s* business or property. Further, Cobb Sr. does not allege that he suffered an injury that is distinct from the alleged injury to the Corporation or that the Defendants owed him a special duty. *See Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 640-41 (9th Cir. 1988) (dismissing RICO claim brought by shareholders of corporation where harm alleged was derivative in nature, rather than direct).

Finally, Cobb Sr. argues that he demonstrates RICO injury based on the allegations that Defendants obstructed justice and caused the *Brede* litigation to be improperly and fraudulently dismissed. Cobb Sr. also alleges that, as a result, he incurred fees and costs, including fees to file an appeal. In support of this theory, Cobb Sr. relies heavily on *Malley-Duff & Associates, Inc. v. Crown Ins. Co.*, 792 F.2d 341 (3rd Cir. 1986).[11] In that case, the plaintiff alleged, as predicate acts, that the defendants obstructed justice during the discovery phase of a related case (the "First Lawsuit") by intimidating the trial judge, plaintiff's counsel and witnesses, by destroying evidence, and by suborning perjury. *Id.* at 355. The court reasoned that a cause of action "is a form of 'property'[.]" *Id.* at 354; *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) ("[A] cause of action is a species of property protected by the Fourteenth Amendment Due Process Clause."); *Parker v. Walker*, 5 Cal. App. 4th 1173, 1182-83 (1992) (citing, *inter alia*, Cal. Civ. Code §§ 663, 953) (cause of action to recover money damages is a form of property under California law).

The *Malley-Court* also stated that when the cause of action "arises out of the termination of a business, we think it is not unfair to characterize conduct tending to impair it as a 'business

---

[11] Because Cobb Sr. is not a party to the *Consunji* litigation, he cannot rely on that litigation to show injury to business or property. However, even if he was, the *Consunji* litigation expressly sought recovery under RICO. For reasons discussed below, the Court finds that any fees incurred during that litigation would not establish RICO injury.

9

injury.'" *Id.* at 354. The court then found that plaintiff's "allegations of great expenses, delays and inconvenience ... in its prosecution of the First Lawsuit were a sufficient pleading of injury to business or property to" establish RICO injury. *Id.* at 355 (internal quotation marks omitted).

Cobb Sr.'s theory of RICO injury is not without support within the Ninth Circuit. *See Miller v. Glen & Helen Aircraft*, 777 F.2d 496, 498-99 (9th Cir. 1985). However, the Ninth Circuit has not yet held that incurring legal fees can give rise to RICO injury. *See, e.g., Thomas v. Baca*, 308 Fed. Appx. 87, 88 (9th Cir. 2009). In *Miller*, the plaintiff brought a Civil RICO claim and alleged, as predicate acts, that the defendants had influenced and bribed witnesses and obstructed justice. The Ninth Circuit concluded that the plaintiff sufficiently alleged RICO injury. As a result of the defendant's conspiracy to interfere with the plaintiff's witnesses in the underlying litigation, "a portion of the insurance proceeds available ... went to pay [a co-defendant's] investigative fees thereby depleting the final settlement amount" paid to the plaintiff. *Id.* at 499.

Although some courts have concluded that incurring legal fees could establish RICO injury, those courts have done so where a plaintiff incurred fees in prior litigation and the fees were proximately caused by conduct that would qualify as a RICO predicate act. *See, e.g., Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1035-36 (N.D. Cal. 2004) (citing cases). In contrast, courts have not been willing to find RICO injury where the fees were incurred to pursue a RICO claim. *See, e.g. Walter v. Palisades Collection LLC*, 480 F. Supp. 2d 797, 805 (E.D. Pa. 2007); *Menjivar v. Trophy Properties IV DE, LLC*, 2006 WL 2884396, at 11-12 (N.D. Cal. Oct. 10, 2006). Those courts have reasoned that the "RICO injury requirement would be a nullity if paying an attorney to initiate the RICO action itself sufficed as damages." *Walter*, 480 F. Supp. 2d at 805; *see also Menjivar*, 2006 WL 2884396, at 12 ("If legal fees associated with a RICO lawsuit itself could constitute the RICO injury, the injury requirement would cease to have any meaning.").

Unlike the *Malley-Duff* case, the *Brede* litigation did not involve an injury to *Cobb Sr.'s* business. In addition, unlike the plaintiffs in the *Miller* and *Malley-Duff* cases, Cobb Sr. did not seek any form of monetary recovery in the *Brede* litigation. Cobb Sr. does not attempt to allege

RICO injury based on any fees that he has incurred in prosecuting this case. However, although Cobb Sr. did not expressly state a RICO claim in the *Brede* case, that appears to have been his intent. Thus, although Cobb Sr. relies on fees incurred in prior litigation to establish RICO injury, the Court finds that this case is analogous to those cases where a plaintiff has alleged RICO injury based on fees incurred to pursue a RICO violation.

Accordingly, the Court finds that Cobb Sr. fails to allege RICO injury based on the allegations that he incurred fees when he pursued and appealed the *Brede* litigation, and the Court grants, in part, the motions to dismiss on that basis. Assuming, *arguendo*, that the allegations would be sufficient to allege RICO injury, for the reasons set forth in the following sections, the Court concludes Cobb Sr. still fails to allege a viable Civil RICO claim or RICO Conspiracy claim.

### 2. Predicate Acts.

Cobb Sr. alleges that the Smith, Sinclitico, Morgan Lewis, JPMorgan and Wells Fargo engaged in a host predicate acts, including, *inter alia*, bribery, mail fraud, wire fraud, bank fraud, obstruction of justice, and money laundering. (*See generally* FAC ¶¶ 104-116, 132-209.)

#### a. Bribery, 18 U.S.C. § 201.

Cobb Sr. alleges that Smith bribed the MPPD, Nathan, Tolbert and Garcia. (*See* FAC ¶¶ 104-108.) However, Cobb Sr. neither alleges that Smith provided anything of value to these Defendants, nor does he allege that they received anything of value from Smith. *See* 18 U.S.C. § 201(b). Rather Cobb Sr. argues that the MPPD and the Court Defendants must have received something of value, because of the risk they faced if their actions were discovered. The allegations of bribery are no more than bare conclusions. Further, it is equally plausible to infer that the MPPD determined that an investigation was not warranted, and the Court Defendants processed genuine orders. Accordingly, with respect to the allegations of bribery, the Court finds that Cobb Sr. has not "nudged [his claim] across the line from conceivable to plausible," and are insufficient to bribery as predicate act to support the Civil RICO claim. *Twombly*, 550 U.S. at 570.

//

11

### b. Mail Fraud and Wire Fraud, 18 U.S.C. §§ 1341, 1343.

Cobb Sr. also alleges that the Defendants violated the mail and wire fraud statutes. Each of these statutes requires that a defendant form a scheme for the purpose of obtaining money or property. *See, e.g., Carpenter v. United States*, 484 U.S. 19, 27 (1987); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006). Cobb Sr. consistently alleges that the purpose of the alleged scheme was to prevent the Cobbs from obtaining the bank records held by JPMorgan and Wells Fargo. (*See, e.g.,* FAC ¶¶ 113, 115, 135, 139, 143, 168, 171, 173, 175, 180, 184.) The one exception is that Cobb Sr. does allege that the Smith, Sinclitico, and Morgan Lewis, with the assistance of the Court Defendants, drafted and then caused to be mailed the Order that terminated the *Brede* litigation. He also alleges that he was defrauded, because he was required to pay $455.00 as a filing fee to appeal that decision. (*Id.* ¶ 158.) Cobb. Sr. does not allege that these Defendants did so for the purpose of obtaining that money, which, in any event, was not paid to any of these Defendants. In addition, for the reasons discussed below with regard to obstruction of justice, the Court finds these allegations insufficient to support the Civil RICO claim.

The Court concludes that Cobb Sr. has not alleged facts showing that the Defendants engaged in mail or wire fraud as predicate acts to support the Civil RICO claim.

### c. Bank Fraud, 18 U.S.C. § 1344.

Cobb Sr. also supports the Civil RICO claim with allegations that the Defendants engaged in bank fraud. (FAC ¶¶ 186-204.) In order to allege bank fraud, Cobb Sr. must allege that the Defendants "execute[d], or attempt[ed] to execute, a scheme or artifice – (1) to defraud a *financial institution*; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a *financial institution*, by means of false or fraudulent pretenses, representations, or promises...." 18 U.S.C. § 1344 (emphasis added). "'It is the financial institution itself ... that is the victim of the fraud the statute proscribes.'" *United States v. Molinaro*, 11 F.3d 853, 857 (9th Cir. 1993) (quoting *United States v. Saks,* 964 F.2d 1514, 1518 (5th Cir. 1992)).

12

1    Cobb Sr. does not allege that JPMorgan or Wells Fargo was the intended victim of the
2 Defendants' purported scheme. Rather, Cobb Sr. alleges that each Defendant, including the
3 banks, was trying to prevent the Cobbs from obtaining bank records. As such, these allegations
4 are insufficient to allege bank fraud as a predicate act in support of the Civil RICO claim.

### d.    Obstruction of Justice, 18 U.S.C. § 1503.

Cobb Sr. also relies on obstruction of justice as a predicate act to support the Civil RICO claim. (FAC ¶¶ 206-207.) Cobb Sr. alleges, *inter alia*, that Smith and Sinclitico actually drafted the orders that terminated the *Brede* litigation. He also alleges that the Court Defendants assisted the efforts to terminate the litigation by processing the orders, knowing that they were not genuine. The Court has carefully considered Cobb Sr.'s allegations, and it has construed the allegations liberally. However, it finds these allegations are unsupported by facts. Cobb Sr. argues that it is plausible to infer that the Court Defendants must have, *inter alia*, accepted bribes to engage in this conduct and to infer that Smith and Sinclitico could not have processed the false orders without assistance from the Court Defendants. To the extent those inferences could be characterized as plausible, an equally plausible inference to be drawn from the allegations is that the orders issued by Judge James were genuine, and she determined that Cobb Sr.'s claims lacked merit. *See Twombly*, 550 U.S. at 566-67.

Cobb Sr. also alleges that the Defendants repeated failures to comply with the subpoenas constitute obstruction of justice. Again, the Court finds that these allegations are not supported by facts. Further, an equally plausible inference is that the Defendants either had valid challenges to the requests or required additional time to produce documents. Accordingly, with respect to the allegations of obstruction of justice, the Court finds that Cobb Sr. has not "nudged [his claim] across the line from conceivable to plausible," and are insufficient to allege obstruction of justice as a predicate act to support the Civil RICO claim. *Id.* at 570.

### e.    Money Laundering, 18 U.S.C. § 1596.

Finally, Cobb Sr. alleges that all Defendants engaged in or are complicit in acts of money laundering. (FAC ¶¶ 208-209.) Although Cobb Sr. incorporates by reference all previous allegations, the allegations that relate to allege money laundering are entirely

13

1 conclusory and unsupported by facts.  The Court finds they are insufficient to allege money
2 laundering as a predicate act to support the Civil RICO claim.
3 Cobb Sr. has not alleged facts showing RICO injury, and he has not alleged any facts
4 that are sufficient to show any of the Defendants engaged in a predicate act.  For these reasons,
5 the Court DISMISSES the Civil RICO claim.  Because the Court has found that Plaintiffs fail to
6 allege a Civil RICO claim under 18 U.S.C. § 196(c), Plaintiffs' RICO Conspiracy claim fails as
7 well.  *See Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) (quoting 18 U.S.C. §
8 1962(d)).

### F. The Court Dismisses the Claims for Slander and Civil Conspiracy.[12]

The remaining claims are state law claims for slander and civil conspiracy between parties who are not completely diverse.  Cobb Sr. alleges that the Court has supplemental jurisdiction over those claims.  A district court may decline to exercise supplemental jurisdiction in a case arising from a common nucleus of operative fact where: (1) a novel or complex issue of state law is raised; (2) the claim substantially predominates over the federal claim; (3) the district court dismisses the federal claims; or (4) under exceptional circumstances. *See* 28 U.S.C. § 1367(c).  In order to make this determination, courts should consider factors such as "economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (internal quotations and citations omitted).  When "federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded by statute*, 28 U.S.C. § 1447(c); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (suggesting in dicta that

---

[12] Slander is "a false and unprivileged publication, *orally* uttered," which, inter alia, "[c]harges any person with crime...."  Cal. Civ. Code §§ 46(1).  To the extent this claim for relief is premised upon a writing, it would be properly characterized as a claim for libel. *See* Cal. Civ. Code § 45.  Civil conspiracy is not a separate and distinct cause of action under California law. *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1228 (9th Cir. 1997).  Instead, civil conspiracy is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its preparation." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 510-11 (1994).

14

"if federal claims are dismissed before trial, ... the state claims should be dismissed as well") (footnote omitted), *superseded by statute*, 28 U.S.C. § 1367.

The United States Supreme Court has explained that "[n]eedless decisions of state law should be avoided as both a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers*, 383 U.S. at 726 (footnote omitted). The Court has dismissed the federal claims, and it also has dismissed the claims against the Court Defendants, and for reasons set forth below, the Court dismisses these claims with prejudice. In addition, Cobb Sr. does not allege that Defendants slandered *him*. Rather, the focus of these claims is on Jason Cobb, who has dismissed his claims. To the extent Cobb Sr. could state a claim for slander, it would be equally convenient for the parties to try that claim in state court. Further, with the exception of resolving these motions to dismiss, the Court has expended few resources in supervising this case. *See Trustees of the Construction Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 926 (9th Cir. 2003) (finding an abuse of discretion where the district court ordered a dismissal of state law claims just seven days before trial and after long delays). Therefore, the principles of comity, convenience, and judicial economy weigh against retaining supplemental jurisdiction in this case.

Accordingly, the Court dismisses the state law claims without prejudice. If Cobb Sr., or Jason Cobb, re-files these claims in state Court, Smith, Sinclitico, Morgan Lewis, JPMorgan, and Wells Fargo are free to renew the arguments raised in their motions to dismiss.

**G.     The Court Denies the Motion to Strike Without Prejudice.**

Smith moved to strike the FAC, pursuant to California's anti-SLAPP statute, which provides a mechanism for a party to strike civil actions brought primarily to chill the exercise of free speech. Cal. Code Civ. Proc. § 425.16(b)(1); *see also Metabolife International, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1221 (S.D. Cal. 2002). However, California's anti-SLAPP statute does not apply to federal claims. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2009). Thus, Smith's motion could only apply to the slander and civil conspiracy claims. For the reasons discussed above, the Court denies the special motion to strike. That ruling is

15

1  without prejudice to Smith renewing the arguments therein, if either of the Cobbs re-files the
2  claims for slander or civil conspiracy in state court.

## CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS, IN PART, AND DENIES, IN PART, the motions to dismiss. The Court DENIES, WITHOUT PREJUDICE, Smith's motion to strike. The Court recognizes that, in general, it should be liberal in granting leave to amend, but Cobb Sr. has amended the complaint once as a matter of right. The Court finds that the deficiencies identified by this Order with regard to the Civil RICO and RICO Conspiracy claims could not be cured by further amendment. The Court also finds that the same is true for the claims against the Court Defendants. Accordingly, the Court dismisses the Civil RICO and RICO Conspiracy claims with prejudice as to all of the named defendants.

The Court also dismisses, with prejudice, all claims asserted against Brenda Tolbert, Ivy Garcia, Chris Nathan, and Mary Ann Buckley.

The Court dismisses the slander and civil conspiracy claims against Smith, Sinclitico, Morgan Lewis, JPMorgan and Wells Fargo, without prejudice to re-filing those claims in state court.

The Court shall enter a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: October 26, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COBB ET AL et al,<br><br>        Plaintiff,<br><br>  v.<br><br>JPMORGAN CHASE BANK, N.A. ET AL et al,<br><br>        Defendant.<br>_____/ | Case Number: CV12-01372 JSW<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 26, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jason E. Cobb
1101 Menlo Oaks Drive
Menlo Park, CA 94025

Jonathan D. Cobb
828 Weeks St.
Palo Alto, CA 94303

Dated: October 26, 2012

*Jennifer Ottolini*

Richard W. Winking, Clerk
By: Jennifer Ottolini, Deputy Clerk